COHEN, J.
Mistie Fetzer (“Former Wife”) appeals from the final judgment denying her petition to relocate to Indiana with the child born of her marriage to Kyle Evans (“Former Husband”). We affirm.
The parties were married for nearly three years, living in California. One child was born of the marriage. The parties divorced in 2008, and the Superior Court of California for Solano County entered a final judgment of dissolution (“the California judgment”). The California judgment incorporated the parties’ marital settlement agreement (“MSA”), which included a time-sharing schedule providing for shared parental responsibility. Specifically, the MSA provided: “Each party shall have [the child] three continuous days per week and every other Saturday. This schedule shall continue on until further order of the court or written agreement of the parties.” At the time the parties entered into the MSA, both Former Wife and Former Husband resided in California, but Former Wife anticipated moving to Florida. Accordingly, the MSA provided:
IN THE EVENT that [Former Wife] relocates to Orlando, Florida within the twelve months following the effective date of this agreement, the child custody and visitation order will be modified as follows:
a. The parties shall share joint legal and joint physical custody of [the child]. [Former Wife] shall have primary physical custody of [the child].
[[Image here]]
*126 e. In the event that [Former Husband] relocates to Florida, the parties will resume joint legal and joint (50/50) physical custody of [the child].
Former Wife moved to St. Cloud, Florida, in April 2008. In an effort to be closer to his child, Former Husband followed, moving to Orlando, Florida, in August 2010. On November 20, 2010, without court approval or Former Husband’s consent, Former Wife relocated with the child to Indiana. On December 3, 2010, Former Husband filed a petition to domesticate the California judgment. He also filed a verified motion for a temporary injunction to prevent the removal of the child. The trial court denied the motion, but set the matter for a hearing on January 27, 2011.
On January 26, 2011, Former Wife filed an affidavit contesting both personal and subject matter jurisdiction. The next day, she filed a notice of special appearance and a motion to dismiss Former Husband’s petition for domestication, again arguing that the Florida court lacked both personal and subject matter jurisdiction.
On February 2, 2011, the trial court entered an order domesticating the California judgment. The order provided that the Florida court would accept full jurisdiction over the parties and subject matter of the California judgment upon receipt of a California order declining jurisdiction. On May 10, 2011, Former Husband filed an order from the Superior Court of California for Solano County declining jurisdiction over the matter.
In the meantime, Former Husband filed a motion for contempt and for return of child. On September 14, 2011, the trial court entered an order on that motion, requiring Former Wife to return the child to Osceola County on or before 11:59 p.m. on October 16, 2011. The trial court set a hearing for October 17 and ordered that the child be brought to the hearing. Although she was served with the order, Former Wife did not return the child to Osceola County by October 16. Instead, she attended the October 17th hearing telephonically. Following the hearing, the trial court entered an order denying Former Wife’s motion to dismiss and directing the parties to attend mediation.[1]
The parties attended mediation on November 15, 2011, which resulted in an impasse. The next day, Former Wife filed a petition to relocate the child pursuant to section 61.13001, Florida Statutes (2011). Former Husband filed a verified objection to the petition.
On April 27, 2012, a non-jury trial on Former Wife’s petition to relocate was held, where the following evidence was presented.[2] At the time of the trial, the child was eight years old. Former Husband was an aerospace equipment technician for the United States Air Force at the time the parties separated. Before Former Wife moved to Florida, the parties had equal time-sharing with the child. When Former Husband agreed to allow Former Wife to move to Florida with the child, there was a “good chance” that he would be transferred to an Air Force base in Florida. From the time the child moved to Florida in April 2008 until the time Former Husband moved to Florida in August 2010, Former Husband spent all of his leave time visiting the child.
When Former Husband later learned that he would be unable to transfer to *127 Florida, he decided to end his career in the Air Force so that he could be closer to his daughter. Other than his daughter, he had no reason to move to Orlando. He had no family or friends in the area and he took a considerable pay cut by leaving his military career. Former Husband’s fian-cée also left a career in the Air Force and moved to Florida so that Former Husband could be a part of his child’s life. From the time he moved to Orlando in August 2010 until Former Wife and the child moved to Indiana in November 2010, Former Husband had time-sharing with the child almost every week from Thursday after school until Monday morning.
Prior to leaving the Air Force and moving to Florida, Former Husband informed Former Wife of his plan to relocate to Orlando. At no time did Former Wife advise him that she planned to move to Indiana. On November 15, 2010, approximately two and a half months after moving to Florida, Former Husband received an email from Former Wife stating that she was relocating to Indiana within one week because her current husband received an offer for a job to begin on November 22, 2010. Former Wife further stated, “as long as we are able to come to a signed and notarized agreement, we can freely change our custody agreement. If we choose to take our custody agreement before a judge for ruling, we will either have to return to California or wait for Florida to adopt the custody agreement (this could take up to a year).” She provided a sample relocation agreement for Former Husband to review.
After a meeting where Former Husband objected to Former Wife relocating with the child, Former Wife became upset, “had a few choice words,” and left. Undeterred, Former Wife moved to Indiana with the child that same week. She neither advised Former Husband that she had decided to relocate the child despite his objection, nor did she give him an opportunity to say goodbye to the child in person. Former Wife did not inform the child’s school that she was moving to Indiana, and Former Husband began receiving phone calls from the school, inquiring about the child’s absences. Former Wife later provided Former Husband with a post office box address, but refused to give him her physical address in Indiana.
Following the hearing, the trial court entered a final judgment denying Former Wife’s petition to relocate. Applying the factors enumerated in section 61.13001(7), Florida Statutes, the trial court found that Former Wife failed to prove by a preponderance of the evidence that relocation was in the best interest of the child. Specifically, the trial court found:
[Former Wife] has shown by her actions a complete disregard to previous Court Orders. It is clear to the Court that after [Former Husband] complied with the previous California Court Order by moving to Orlando in order to be closer to his daughter, [Former Wife] and her now husband under took [sic] measures to re-locate out of Central Florida and did not provide [Former Husband] notice until shortly before the move. This included bringing a Relocation Agreement to [Former Husband] on very short notice before the sudden move to Indiana. The Court has observed the demeanor and evaluated the credibility of the witnesses and relied on those observations and evaluations in determining the disputed issues of fact. The Court finds [Former Wife] comes into this proceeding with unclean hands and has attempted to interfere with the relationship of her daughter and [Former Husband]. If the Court were to grant [Former Wife’s] Motion to Relocate, it is extremely unlikely [Former Wife] would *128 comply with further Court Orders and would impede contact between the child and [Former Husband].
The trial court ordered Former Wife to return the child to Orlando by June 4, 2012. The judgment further provided that if she moved back to Orlando, the parties would resume equal time-sharing, as set forth in the California judgment.
When Former Wife did not return the child as ordered, Former Husband filed a motion to enforce the final judgment. Former Wife responded by filing a motion for rehearing or reconsideration, in which she argued that the trial court did not have jurisdiction over the parties and that the trial court’s findings were not supported by the evidence. That motion was denied.
Former Wife filed a timely notice of appeal from the final judgment denying her petition to relocate. She then filed an emergency motion to stay pending appeal, which the trial court denied, stating, “[Former Wife] has created her claim of ‘emergency’ by her unilateral removal of the child from Florida, without permission of the [Former Husband] or this Court.”
Former Wife raises a number of issues on appeal. For example, she argues that the trial court erred in applying section 61.13001, Florida Statutes — the statute governing relocation — to this case. Former Wife submits that the trial court should have instead required Former Husband to prove that there had been a substantial change in circumstances since entry of the initial judgment determining time-sharing, pursuant to section 61.13, Florida Statutes. We first note that Former Wife did not raise this issue below. In fact, she specifically sought relief pursuant to section 61.13001 in her petition to relocate. Moreover, her argument lacks merit. Former Husband was not required to prove a substantial change in circumstances because he was not seeking a modification of the time-sharing schedule. See § 61.13, Fla. Stat. (2011) (explaining that in order to modify a parenting plan or time-sharing schedule, the noncustodial party must prove a substantial change in circumstances). Instead, he merely sought to enforce the time-sharing schedule set forth in the California judgment, which provided for equal time-sharing once he moved to Florida. We cite this issue as an example of the nature of the arguments Former Wife raises on appeal, all of which are devoid of merit.
We conclude that the trial court’s judgment is well-supported by the evidence. Accordingly, we affirm.
AFFIRMED.
SAWAYA and BERGER, JJ„ concur.

. Apparently, no sanctions were imposed for violation of the court order requiring Former Wife to bring the child to court.

. The facts are presented in the light most favorable to the appellee, Former Husband. See Neuman v. Harper, 106 So.3d 974, 976 (Fla. 5th DCA 2013).